UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:22-CR-217-M-RN

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | GOVERNMENT'S MOTION FOR |
| v. | ) | UPWARD DEPARTURE OR, |
| | ) | ALTERNATIVELY, MOTION FOR |
| NOAH EDWIN ANTHONY | ) | VARIANCE |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, hereby moves this Court, pursuant to United States Sentencing Guideline (U.S.S.G.) §5K2.0, for an upward departure from the advisory guideline range based on circumstances of a kind not adequately taken into consideration. Alternatively, the United States of America moves this Court for an upward variance in light of the factors outlined in 18 U.S.C. §3553(a). In support thereof, the Government shows unto the Court the following:

## PROCEDURAL BACKGROUND

On September 13, 2022, the defendant was named in a single count Indictment filed in the Eastern District of North Carolina. The Indictment charged Receiving, Possessing, Transferring, or Manufacturing a Firearm Not Registered in the National Firearms Registration and Transfer Record on March 3, 2022, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.

On April 25, 2023, the defendant pleaded guilty without a plea agreement. The Presentence Investigation Report (PSR) calculated the defendant's criminal history score to be 0, resulting in a criminal history category of I. (PSR ¶ 18). The

PSR calculated the defendant's sentencing guideline range to be 18 to 24 months. (PSR ¶ 47).

# DISCUSSION

I. UPWARD DEPARTURE

    a. Law Regarding Upward Departures

As a result of the Sentencing Reform Act of 1984, the United States Sentencing Guidelines ("Sentencing Guidelines") were created to provide district courts with a range of months within which to sentence each class of convicted persons. Congress, "[a]cknowledging the wisdom, even the necessity, of sentencing procedures that take into account individual circumstances," included provisions within the Sentencing Guidelines, which provided district courts with the authority to depart from the prescribed guidelines in certain instances. Koon v. United States, 518 U.S. 81, 92 (1996). In addition, according to 18 U.S.C. §3553(b), a variance from the Sentencing Guidelines is warranted in the following situation:

> [If] the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.

Id. In order to determine if an aggravating circumstance exists which was not taken into consideration in formulating an applicable guideline, it is necessary to turn to the Sentencing Guidelines and its underlying policies. As noted by the Supreme Court in Koon, the Sentencing Guidelines reflect the Sentencing Commission's intent to cover the typical cases in each criminal category, but to allow district courts to depart from an applicable guideline range in unusual cases. Id. at 93. This principle is set forth in the Sentencing Guidelines as follows:

> The [Sentencing] Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' set of typical cases embodying the conduct that each guideline describes. When the court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted.

U.S.S.G., Ch. 1, Pt. A, Intro. Comment 4(b);

The Sentencing Guidelines divides atypical cases (commonly referred to as cases falling out of the "heartland") into three categories. The first category covers departures based on factors that are encouraged by the Sentencing Commission. If an encouraged factor is present, a district court is free to depart as long as the factor has not already been taken into account in the applicable guideline section. See U.S.S.G. §5K2.0.

The second category covers departures based on either of the following types of factors: (i) encouraged factors that have already been taken into account in the applicable guideline section; and (ii) factors that fall within the list of discouraged factors contained in Section 5K. Id. If the basis for the departures fall into this second category, a district court has the discretion to depart "only if the factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present." United States v. Debeir, 186 F.3d 561, 566 (4th Cir. 1999), citing Koon v. United States, 518 U.S. 81, 96 (1996).

The third departure category covers cases involving factors that are not mentioned in the Sentencing Guidelines. In determining whether to depart based on this category, the district court is required to consider the "structure and theory of both relevant individual guidelines and the Guidelines taken as a whole" and the

"Commission's expectation that departures based on grounds not mentioned in the Guidelines will be highly infrequent." Koon, 518 U.S. at 96.

The Sentencing Guidelines expressly allows departure based on circumstances of a kind not adequately taken into consideration by the Sentencing Commission. U.S.S.G §5K2.0; Koon, 518 U.S. at 95 ("Encouraged factors are those 'the Commission has not been able to take into account fully in formulating the guidelines.'"). Thus, the ground for an upward departure relied on in support of this motion is an encouraged factor for departure not otherwise taken into consideration in the applicable guideline sections. Consequently, the Court is free to upwardly depart if it finds that the encouraged factor is present.

> b. <u>The defendant's plan to kill minorities presents circumstances of a kind not adequately taken into consideration by the Sentencing Commission.</u>

As stated above, U.S.S.G. §5K2.0 encourages an upward departure if a circumstance is present in defendant's case which has not adequately been taken into consideration in determining the applicable guideline range.

While the government thwarted the defendant's desire to kill minorities before he could fully implement his plans, this is a circumstance not adequately considered in the sentencing guidelines. Thankfully, on March 3, 2022, a random vehicle inspection at Fort Liberty disrupted the defendant's future intentions. After midnight on that date, the defendant was stopped and asked by the gate guard "if he had any drugs, weapons or anything we need to worry about in his vehicle;" the defendant said "No." Gov. Ex. 1. The defendant lied, because the guard discovered a 9mm privately manufactured handgun, commonly referred to as a "ghost gun." Id.; PSR ¶ 6. Military police also located two extended 30 round 9mm

magazines, a shotgun bandoleer with shotgun rounds, and a metal pipe "similar in size and construction to the type used in homemade explosive devices." Gov. Ex. 2; PSR ¶¶ 6, 8. Additionally, extremist paraphernalia was found including a "patch depicting a United States flag with a swastika in place of the stars." PSR ¶ 6. The defendant's lies were obviously made to avoid discovery of these items, as well as what further investigation recovered.

Due to the discovery of the above items in the defendant's car, military police then searched his barrack's room, where defendant was the sole occupant. PSR ¶ 7. The search of the room revealed "a 3D-printed privately manufactured 9x19 caliber short-barreled rifle "ghost" gun with a barrel shorter than 16 inches." Id. ATF later determined this firearm was Model FGC-9 (Fuck Gun Control 9mm) type short-barreled rifle with a five-inch barrel and total size of 21 inches. Gov. Ex. 3. The importance of the short barrel rifle to the defendant's later discovered plan is self-evident: (1) to have a dangerous weapon untraceable by the government; and (2) for the dangerous weapon to be concealable in carrying out the previously planned violent activity.

Additionally, military police found several firearm parts including "an AR-15-style "80%" lower receiver having no serial number, various ammunition and magazines including "five rounds of shotgun ammunition . . . a butane bottle handheld torch, a machete" and several gallon sized containers of acetone, bleach, ammonia, and 70% isopropyl alcohol; all "chemical precursors consistent with making explosive devices." PSR ¶ 7-8. The Hazardous Materials unit called out to the scene stated, "the only compound missing [to make an explosive] was an item to

5

act as fragmentation, such as a pipe or gas can." PSR ¶ 8. Notably, the metal pipe found in the defendant's car is precisely the type of item he needed to finalize an explosive device. PSR ¶¶ 6,8.

The search of defendant's room also uncovered additional "nazi and white supremacy extremist propaganda throughout his room . . . including clothing, patches, notes, and literature." Gov. Ex. 4; PSR ¶ 9. "Several of the notes appeared to be in coded language and other notes disclosed plans to purchase additional untraceable weapons from unnamed individuals in Virginia and North Carolina." Gov. Ex. 5; PSR ¶ 9. Especially pertinent here, the defendant had already acquired several weapons and weapons parts, which he checked off his list. Gov. Ex. 5.

The defendant is an active-duty soldier tasked with the safety and protection of all U.S. citizens; thus, his harboring an association with ideologically hateful view towards many citizens based on their skin tone alone is obviously concerning. This concern is heightened as it is recognized that these ideologies very often advocate for violence. Increasing this concern even further is defendant's training in firearms and decision to possess an unlawful firearm. These legitimate, yet theoretical concerns however take on a very different texture based on the defendant's intentions.

Most disturbing, a search of the defendant's electronic devices uncovered "an operations plan titled *Top Secret Goebbels*."[1] Gov. Ex. 6; PSR ¶ 10. The defendant's four-page plan mimics the operational plans utilized by military units in combat. The first line after the title states "Operation der Schwarze" which appears to

---

[1] "Paul Joseph Goebbels was a German Nazi politician and chief propagandist for the Nazi Party." PSR ¶ 10, fn 5.

translate from German to English as "Operation the Black" or "Operation the Black Person."[2] Gov. Ex. 6. The defendant's mission statement in the plan reads: "This operation is a planned premediated attempt to physically remove as many of the Negro, Spics and Mongrels from Hoke, Cumberland, Robeson and Scotland Counties by whatever means need be." Id. The above counties are listed under the plan's "AO" (Area of Operations) section and "Negros, Spics and Mongrels excluding service members of the Armed Forces" are listed in the plan's "Target" section. Id. The defendant's plan lists the racial demographics of North Carolina and immediately thereafter: "The only race that is decreasing in the White Race. This must stop. Twenty-one out of one hundred counties now have a minority-majority population." Id. After comparing the total population of individuals in the target counties, the defendant states: "In every case these are majority sub-human counties. In every case the White Man declined." Id. The defendant's operations plan further states: "Cumberland County with Fayetteville as the crown jewel is the highest population with the most per capita sub-humans. The high crime rate is likely to mask the operational activities." Id. In other words, the defendant's violent race-based acts may go unnoticed amongst the other violent crime already occurring.

The plan contains a "Methods" section, and under "Anti-property," the plan states "Arson: likely gasoline or self-applied torch." Id. As indicated above, defendant had already acquired a hand-held torch and several precursor materials. Next, under "Anti-personal" lists: "Poisoning: Ricin preferred, application?" Next, the plan considered a shotgun but indicates "very unlikely, many risks;" however,

---

[2] https://www.collinsdictionary.com/us/dictionary/german-english/schwarze_1#:~:text=Schwarze-,%5B%CB%88%CA%83varts%C9%99%5D,Schwarze%20is%20a%20feminine%20noun.

7

as indicated above, the defendant has already acquired a shotgun bandoleer and multiple shotgun rounds.

Finally, the defendant's plan contains a "Targets" section and states: Minority businesses, meeting places and neighborhoods." Under "Execution of Operations" the plan states "Date: Location: Method: Effect: Deaths" and immediately underneath "14Aug: Lumberton Islamic Center: Arson: Damage: xo" suggesting one of the defendant's targets and a date to attack it had already been considered.

The defendant thoroughly thought out and researched his operations plan to kill minorities in the Cumberland County and surrounding areas. The defendant not only put his ideas in writing, but he also acquired several implements to carry out his plan – a handheld torch, precursor materials, and shotgun ammunition. Additionally, the defendant was actively acquiring multiple firearms, including firearms he built himself and knew they were illegal to possess, in preparation for his stated goals. At a minimum the evidence supports by a preponderance of the evidence that the government disrupted the violent plan devised by the defendant; and the unlawful firearm in his possession is clearly linked to those plans.

A review of the totality of the circumstances presented above makes clear that an upward departure is warranted because the circumstances are present in defendant's case which has not adequately been taken into consideration in determining the applicable guideline range; specifically, the defendant's secret plan, which he was working towards to kill minorities, and his acquisition of the tools to carry out his plan presents a circumstance not adequately considered by the sentencing commission.

## II. UPWARD VARIANCE

A variance is a non-Guidelines sentence justified under the sentencing factors set forth in 18 U.S.C. §3553(a). See Irizarry v. United States, 553 U.S. 708, 715 (2008). If after calculating the advisory guideline range a court decides not to upwardly depart, it may still vary upwards based on the factors set out in 18 U.S.C. §3553(a). United States v. Evans, 526 F.3d 155, 154-65 (4th Cir. 2008). When varying from an advisory guideline range, the district court must give serious consideration to the extent of the variance and must adequately explain the chosen sentence to allow for meaningful appellate review to promote the perception of fair sentencing. Gall v. United States, 552 U.S. 38, 46 (2007).

Title 18 U.S.C. §3553 outlines the factors a court is to consider in determining what sentence to impose. Specifically, §3553(a) states:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>   (2) the need for the sentence imposed--
>       (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>       (B) to afford adequate deterrence to criminal conduct;
>       (C) to protect the public from further crimes of the defendant; and
>       (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>   (3) the kinds of sentences available;
>   (4) the kinds of sentence and the sentencing range established for--
>       (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

> . . . .
> (5) any pertinent policy statement--
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a)(2016). In this case, a variance above the currently calculated guideline range of 18 to 24 months is necessary to give meaning to the §3553(a) factors.

The instant offense conduct shows the defendant's disrespect for the law and disregard for the lives of others. As discussed above, the defendant had already built a privately manufactured or "ghost gun" – an illegal short-barreled rifle. The defendant also created an operations plan with the stated purpose to kill minorities. And he was already acquiring several implements in order to carry out his secret plan.

An above guideline sentence is appropriate in this case to provide just punishment and promote respect for the law. Based on 18 U.S.C. §3553(a) factors, the Government believes an upward variance is appropriate and a sentence of 37 to 46 months is sufficient but not greater than necessary to reflect the seriousness of the offenses, protect the public from future crimes of the defendant, to provide adequate deterrence to criminal conduct, and to provide just punishment. Additionally, to provide the defendant with needed educational training, medical care, or other correctional treatment in order to ensure the defendant understands does not continue on the path he had been when he was arrested.

CONCLUSION

WHEREFORE, based on the above, the United States respectfully moves this court, pursuant to U.S.S.G. §5K2.0, for an upward departure from the advisory guideline range or, in the alternative, an upward variance based upon the factors in 18 U.S.C. §3553(a).

Respectfully submitted this the 7th day of March 2024.

                                        MICHAEL F. EASLEY JR.
                                      United States Attorney

                                      BY: /s/ *Gabriel J. Diaz*
                                      GABRIEL J. DIAZ
                                      Assistant United States Attorney
                                      United States Attorney's Office
                                      150 Fayetteville Street, Suite 150
                                      Raleigh, NC 27601
                                      Telephone: (919) 856-4326
                                      Email: gabriel.diaz@usdoj.gov
                                      NC State Bar No. 49159

CERTIFICATE OF SERVICE

This is to certify that I have this 7th day of March 2024 served a copy of the foregoing Motion upon counsel for defendant through electronic filing via CM/ECF to:

Christopher J. Locascio
Attorney for the Defendant

MICHAEL F. EASLEY JR.
United States Attorney

BY: /s/ *Gabriel J. Diaz*
GABRIEL J. DIAZ
Assistant United States Attorney
Criminal Division
